HELEN MACKO, PETITIONER-PROSECUTRIX, v. RARITAN VALLEY FARMS. INC., RESPONDENT-DEFENDANT.

Submitted October 5, 1943—Decided February 16, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutrix, *Newcorn & Newcorn* (*William Newcorn,* of counsel).

For the defendant, *George F. Lahey, Jr.*

The opinion of the court was delivered by

HEHER, J. The question for decision is whether the proofs establish that prosecutrix has suffered personal injury by an accident which arose out of and in the course of her employment with the defendant, within the purview of *R. S.* 34:15–7, *et seq.* The Compensation Bureau resolved the issue in the affirmative; and the Somerset County Court of Common Pleas reversed the judgment.

Our appraisal of the evidence leads to the conclusion that the burden of proof has not been sustained.

Prosecutrix was employed as a waitress. She testified that on March 29th, 1941, there was controversy respecting conflicting work assignments given her by defendant's manager and another waitress, in the course of which the latter "gave" her "a shove," and as a result her head came into contact with a condiment cabinet, and she "started getting dizzy;" and that she then undertook to wipe the bottom of a table, and when she "tried to raise" herself, her head "struck the

side of the table." The manager called a physician, Dr. Bendix, who was then in the restaurant. The physician testified that prosecutrix was "very excited" and complained of a "severe headache." She told him that she had had "an argument in the service department," and that it was followed by "a very sharp headache." He examined her, but found no indication of a head injury. She did not tell him that her head had struck the cabinet and table; there was no complaint of external violence. Indeed, she did not tell of the alleged physical impact until the fall of 1941, although meanwhile she had undergone two head operations by a neurosurgical and brain specialist, Dr. Davidoff. The first examination by this physician was made on April 5th, 1941; and he found no evidence of an external head injury. It is explained that the patient, although "fairly alert and co-operative," was then "suffering from mixed aphasia, more motor than sensory." This condition affected expression and articulation more than memory and power of recollection. But, as will be seen presently, the brain ailment was a severe one, and it is by no means clear that her memory was not seriously affected, although it is significant she told of the "argument" at the outset without mentioning the subsequently asserted head blows. If her memory had been impaired by disease, what she related of the occurrence must needs be carefully scrutinized and accepted with caution.

Prosecutrix manifested symptoms of subarachnoid bleeding and encephalomalacia, i. e., softening of the brain. The surgical operations—the first performed on April 7th, 1941, and the second on the ensuing April 21st—revealed "a brain tissue which was yellowish, discolored and extremely soft." Dr. Davidoff said this "might have represented either a degenerated tumor or degenerated brain tissue, which has become swollen, secondary to a blood vessel disturbance, such as a hemorrhage." The X-rays disclosed a "displacement of the brain toward the right;" and this is indicative of a tumor, since it does not ordinarily result from softening of the brain.

A finding that prosecutrix suffered a head injury from external force, as she testified, and that this resulted in degeneration of the brain substance, would plainly be con-

trary to the weight of the evidence. The witnesses of the occurrence all agree there was no such happening. There was uncontradicted evidence that the cabinet was so constructed as to render this a physical impossibility, and that the cleaning under the tables was done by male porters. And it is inconceivable that mere emotional stress arising from the conflicting orders could possibly have produced such grave consequences; certainly, that inference is not a reasonable one. The surgeon's theory that "excitement in a person who had a propensity toward blood vessel disease of the brain might have produced this" is purely speculative. And he conceded that "the history of a blow was a more logical precedent to the type of lesion she had in the brain." The evidence adduced in support of these hypotheses does not satisfy the legal standard.

It is fairly inferable that the controversy adverted to was in no small part due to prosecutrix' irritability, concededly an accompaniment of the brain disease from which she then suffered. Her own surgeon's testimony suggests that this morbid condition pre-existed the altercation, and that the encounter may have produced aggravation or acceleration of the disease. But there is no tangible basis for such a finding. That would be the merest conjecture. The witness assumed there had been "a violent argument;" but the proofs do not preponderate in favor of that theory. His conclusion would be otherwise if the assumption were not well founded.

The presumption is that this brain condition is idiopathic and not traumatic as regards both origin and development; and the burden is on the injured employee to establish an industrial accident as a *causa sine qua non*. The evidence must bring this hypothesis within the realm of probability. *Schlegel* v. *H. Baron & Co.*, 130 *N. J. L.* 611. It is axiomatic that disability suffered in the course of his employment, arising from natural causes unrelated to an industrial mishap, is not compensable. To merit that classification, it must be the proximate result of an accident within the statutory sense.

The judgment of the Court of Common Pleas is affirmed, without costs.